UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CHERYL MORRIS,

                 Plaintiff,

    -against-

NYS DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION,

                 Defendant.
-----------------------------------------------------------------X

Docket No. 1:23-cv-89 (LEK/ML)

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff CHERYL MORRIS ("Plaintiff" or "Ms. Morris"), by through her counsel, Tully Rinckey, PLLC, hereby alleges as against Defendant NYS DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION ("Defendant" or "DOCCS"), as follows:

**PRELIMINARY STATEMENT**

1. Defendant DOCCS has engaged in a continuous pattern and practice of racial discrimination for more than thirty (30) years as Plaintiff has been subjected to harassment and discrimination since 1992. Plaintiff is an African American female who identifies as non-heterosexual. She was employed by Defendant until she resigned on February 24, 2022, due to the ongoing discrimination and harassment.

2. The racial discrimination was systemic and continuous. *First,* over the course of nearly a decade, Plaintiff was denied promotion opportunities despite recurrent recommendations for promotion from her supervisors. *Second,* Plaintiff was held to differing standards as to what qualifications she needed for promotions than those of her non-African American coworkers. *Third,* Defendant engaged in policies and practices which disadvantaged Plaintiff. *Fourth,* Defendant failed to provide Plaintiff with accommodation to care for her terminally ill mother. *Fifth,* Defendant, upon learning of Plaintiff's reports of illegal activity and unlawful

1

discrimination, subjected Plaintiff to retaliation.

3. Based on the foregoing, Plaintiff is now bringing this action to seek redress for the racial discrimination she has experienced pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law, New York State Executive Law §§ 296, et seq. ("NYSHRL"), and New York State Labor Law § 740 ("NYLL"). Plaintiff is also bringing a claim for discrimination and retaliation pursuant to the Family Medical Leave Act ("FMLA").

4. For the foregoing violations of Plaintiff's rights, Plaintiff is seeking monetary relief (including past and ongoing economic loss), compensatory and punitive damages, disbursements, costs, and fees.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1334.

6. This Court is requested to exercise pendent jurisdiction with respect to Plaintiff's New York State law claims pursuant to 28 U.S.C. § 1367.

7. Venue in the Northern District of New York is proper under 28 U.S.C. § 1391 because this is the place where the unlawful employment practices occurred.

## ADMINISTRATIVE PROCEDURES

8. On January 5, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), among other claims.

9. On October 25, 2022, the EEOC issued a Notice of Right to Sue, setting forth her rights to bring this claim under federal law. (See Exhibit A).

10. Plaintiff has complied with any and all other prerequisites to filing this action.

## JURY DEMAND

11. Plaintiff demands a trial by jury on all claims so triable.

## PARTIES

12. At all times relevant herein, Plaintiff Cheryl Morris was and remains a natural person and currently resides in the County of Albany, State of New York.

13. At all times relevant herein, Defendant NYS Department of Corrections and Community Supervision maintained its principal place of business at 1220 Washington Ave #9, Albany, NY 12226.

14. Defendant is a Department of the New York State government and exists under the laws of the State of New York.

15. At all times relevant herein, Defendant was an "employer" within the meaning of 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the Human Rights Law of the State of New York, and the New York Labor Law ("NYLL").

16. At all times relevant herein, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the Human Rights Law of the State of New York, and the NYLL.

## FACTUAL ALLEGATIONS

17. Plaintiff identifies as a Black Female.

18. Plaintiff's sexual orientation is non-heterosexual.

19. Plaintiff has been employed by Defendant in multiple positions for more than twenty-five years.

20. At all relevant times, Plaintiff has been an exemplary employee for Defendant.

21. From 2010 to 2016, Plaintiff served as Director of Ministerial, Family, and

Volunteer Services at DOCCS Central Office.

22. While serving as the Director of Ministerial, Family, and Volunteer Services at DOCCS Central Office, Plaintiff provided administrative leadership, managed and directed daily operations; drafted agency policy for the Deputy Commissioner's signature; advised agency counsel, the Attorney General's Office, the Commissioner, and his executive team on various matters related religious accommodations and family services; and established agency benchmarks and evaluated program effectiveness to achieve desired outcomes. As a result of Plaintiff's actions on behalf of Defendant, the religious accommodation department saw a major uptick in the number of successful appeals for Defendant. Plaintiff elected to leave this position in 2016 due to the lack of career advancement, as she had been informed that she would need to return to a prison for the necessary qualifications. The lack of career advancement, when combined with the hostile work environment Plaintiff faced, resulted in her leaving her position as Director.

23. From 2016 until 2021, Plaintiff served as the Deputy Superintendent of Programs at the Eastern Correctional Facility ("Eastern").

24. As the Deputy Superintendent of Programs at the Eastern Correctional Facility, Plaintiff served as Acting Superintendent as needed, overseeing all aspects of facility operations to ensure the safety and well-being of all staff and inmates; drafted and implemented facility policy, as well as developed programs for inmates; and served as a member of a multi-disciplinary team that conducted weekly audits to ensure that the facility was in compliance with agency, state, and federal law as well as with PREA and ACA standards.

25. At all relevant times, Defendant's Deputy Commissioner for Program Services was Jeff McKoy ("Deputy Commissioner McKoy").

26. Upon information and belief, Deputy Commissioner McKoy is and was an African

American Male.

27. At all relevant times, McKoy was a key decision maker with respect to Plaintiff's promotions and career advancement. He knew of Plaintiff's promotional aspirations and repeatedly thwarted them.

28. McKoy knew about Ms. Morris' status as an African American, gay woman.

29. As of 2017, the Executive Deputy Commissioner was Daniel Martuscello ("Martuscello").

30. Upon information and belief, Executive Deputy Commissioner Martuscello is and was a White/Caucasian Male.

31. Since 2017, Executive Deputy Commissioner Martuscello was a key decision maker with respect to Plaintiff's promotions and career advancement. He knew of Plaintiff's promotional aspirations and repeatedly thwarted them.

32. Martuscello knew about Ms. Morris' status as an African American, gay woman.

*Plaintiff Was Consistently Denied Promotions*

33. In 2012, after Deputy Commissioner McKoy assumed the position, Catherine Jacobsen ("Jacobsen"), Plaintiff's immediate supervisor at the time, approached Deputy Commissioner McKoy regarding a promotion for Plaintiff. In response, Deputy Commissioner McKoy responded that Plaintiff was not "ready" for a promotion.

34. By way of background, Jacobsen had replaced the previous Deputy Commissioner, Kenneth Perlman ("Perlman"), who had become ill. Perlman had promised Plaintiff that if she "cleaned up" the Ministerial, Family & Volunteer Services at Eastern, he would promote her to a superintendent at a prison.

35. Upon Perlman's departure, his replacement, Jacobsen, recommended to McKoy

that Plaintiff be promoted in furtherance of Perlman's promise, and because she was eligible for same.

36. When Plaintiff spoke with Deputy Commissioner McKoy about what Perlman had stated, McKoy said he was not obligated to fulfill that promise. Importantly, by then, McKoy knew of Perlman's promise and Jacobsen's recommendation. Nonetheless, he flippantly disregarded both.

37. This was the beginning of a pattern and practice of Defendant denying Plaintiff a promotion based on arbitrary and pretextual reasons.

38. Importantly, Plaintiff's annual evaluations during the relevant period indicated satisfactory with no deficiencies noted.

39. In 2013, Plaintiff's then-current supervisor, Diane Catalfu, advocated for Plaintiff's promotion with Deputy Commissioner McKoy, but was again told no promotion was forthcoming.

40. In 2015, Plaintiff's then-current supervisor, Mary Vann, advocated for Plaintiff's promotion with Deputy Commissioner McKoy, but was again told no promotion was forthcoming.

41. In 2016, Plaintiff, whose promotion attempts had been stymied by Deputy Commissioner McKoy for six years, requested a transfer out of the Central Office.

42. By the time Plaintiff requested her transfer, Plaintiff had become a subject matter expert in the field of religious accommodations, been selected to work on nationwide trainings, and established a flawless record of winning every case she oversaw.

43. In 2017, Plaintiff approached Martuscello, the new Executive Deputy Commissioner, to seek the status of her advancement and whether she had been deemed unpromotable. Plaintiff explained that she had requested promotions from McKoy numerous times, and he had denied her repeatedly, without explanation, apart from maintaining vaguely that

6

she was "not ready." Plaintiff stated that McKoy's persistent denials were due to discrimination and retaliation based on her race and sexual orientation and the fact that she had questioned Defendant's decisions to overlook questionable actions of a vendor contractor. Martuscello said that he would speak with McKoy about Plaintiff's aspirations and concerns but warned Plaintiff that McKoy "wasn't going to be happy." This was a veiled threat of retaliation.

44. In 2017, 2018, and 2019, William Lee, Prison Superintendent, recommended Plaintiff for promotion in each of his year-end reports

45. In 2020, Lynn Lilley, Prison Superintendent, recommended Plaintiff for promotion as part of his year-end report.

46. Despite repeated recommendations, Plaintiff was denied a promotion. By contrast, her white counterparts were routinely promoted, despite being *less* qualified than her.

47. Notably, during the relevant period, three women received promotions to Assistant Commissioner: i) Linda Hollmen (Caucasian) who had previously served as Director of Education and had some prison experience; ii) Rachel Young (Caucasian) who had previously served as Director of Substance Abuse Services and had some prison experience; and iii) Lissette Roldan-Hart (Latina) who previously served as Director of Transitional Services and also had some prison experience. Importantly, each of these candidates held the title of Director but were then promoted to Assistant Commissioner, which is precisely what Plaintiff had requested multiple times. Unlike Plaintiff, these white applicants were *not* told that there were additional requirements – such as additional training in prison or training at large – that were necessary for the role of to Assistant Commissioner. Plaintiff, by contrast, was told repeatedly that she had to go back to prison to gain additional training before she would be ready for the role of Assistant Commissioner.

48. Despite its claims of equality, DOCCS appears to have separate standards for the

promotion of white/Caucasian employees versus non-white/Caucasian employees, as detailed herein.

49. Indeed, Deputy Commissioner McKoy did not announce any of the vacancies related to the role she was seeking. Instead, he called the applicants of his choosing for an interview, and he never called Plaintiff.

50. Significantly, Defendant posted some job vacancies but not others, at its discretion. This arbitrary policy disadvantages Plaintiff.

***The Final Straw – Plaintiff is Denied a Promotion in 2021***

51. On November 23, 2020, Deputy Commissioner Osborn McKay ("McKay") recommended Plaintiff for a promotion. (*See* Exhibit B). The relevant e-mail string begins with Plaintiff thanking Mr. McKay for the support and appreciation he showed on his visit to her site that day. It memorializes a conversation where Plaintiff had expressed her desire for a promotion and accordingly annexed her resume to the e-mail. Ms. Moulton, on behalf of Mr. McKay, then forwarded Ms. Morris' resume with the statement that Ms. Morris "has a strong educational background and a wealth of work experience" and continued that in Ms. Morris, they have "an opportunity to open the door to additional opportunities for those that are *underrepresented at the Facility Executive Team Level*." (Id) (emphasis added).

52. In response to McKay's advocacy on Plaintiff's behalf, Martuscello stated that more training was necessary for Plaintiff. (*See* Exhibit B). This was disingenuous because other applicants had made the transition from Director to Assistant Commissioner without needing this pretextual "training."

53. Subsequently, on or about August 2021, McKay's secretary reached out to Plaintiff directly to invite her to apply for the position of Assistant Commissioner, which is precisely the

role she wanted. Since this position was under McKay's authority, his office reached out to Plaintiff directly. In response, Plaintiff applied for this position. Importantly, McKay's supervisor was Martuscello; thus, even McKay's recommendations were subject to Martuscello's veto. In response to her application, Plaintiff received an interview before a panel of several individuals. However, approximately one (1) month later, Plaintiff learned that she had not been selected for the role. Instead, the position had been given to a white applicant who was *less* qualified than Plaintiff and had far less experience.

54. Several months after this, Plaintiff put in her resignation, due to the systemic and continuous discrimination, which had become intolerable.

***Plaintiff was Denied an Accommodation to Care for her Terminally Ill Mother***

55. In December 2019, Plaintiff's mother was diagnosed with a terminal illness and hospitalized.

56. In April 2020, Plaintiff emailed Commissioner Annucci to ask for a hardship transfer, to which he replied that staff would follow up.

57. Approximately one (1) week after Plaintiff's email to Commissioner Annucci, Deputy Commissioner McKoy reached out to Plaintiff to state that the transfer was not likely to happen with COVID-19.

58. Upon information and belief, there was a vacancy in the area Plaintiff had requested to transfer.

59. When Plaintiff received word in April 2020 that her mother's condition had worsened, Plaintiff took leave pursuant to the Family Medical Leave Act ("FMLA"), to spend time with her mother before she passed. As a result, Plaintiff intermittently took off work to care for her mother from December 2019 through April 2020 and was off the entire month of May 2020.

60. Upon Plaintiff's return to the office, she placed a verbal request for leave on Friday

in order to clear her mother's apartment, but William Lee verbally denied the request.

61.     Plaintiff followed up with a written leave request, which was denied and returned with a note from William Lee stating she needed to come to work.

62.     After William Lee responded to Plaintiff's leave request, he then instructed Plaintiff to work on the Saturday and Sunday, her days off, despite the fact that there were no major issues and sufficient coverage without her attendance.

63.     During the relevant period, Tom Melville (Caucasian) lost his father and William Lee permitted him to take a week off work.

64.     During the relevant period, Robert Szeminecki (Caucasian), lost his son and William Lee permitted him to go on leave for more than two months.

65.     When Plaintiff returned from FMLA leave, she was denied being appointed as the interim superintendent at Eastern. Usually, this role goes to the most senior person, which was her. Nonetheless, she was denied this role in relation for taking FMLA leave.  The role was given to Tom Melville, a White/Caucasian Male, who was *less* qualified than Plaintiff.

**Plaintiff Engaged in Protected Activity Which Led to Retaliation**

66.     In Spring 2017, Plaintiff reported to Mr. Martuscello that she had been subjected to discrimination by Deputy Commissioner McKoy, as detailed above.

67.     Additionally, during the relevant period, Plaintiff informed her chain of command of illegal contracts.

68.     In response, Defendant failed to engage in any investigative or remedial action, but instead sanctioned the unlawful discrimination. Worse still, Defendant retaliated against Plaintiff for engaging in protected activity. Specifically, as a result of having repeatedly addressed the illegal contracts and unlawful discrimination, Plaintiff was repeatedly denied promotion

opportunities.

69. Likewise, on or about 2020, Plaintiff conveyed to Deputy Commissioner McKay that she was being denied career advanced, and he sent an email to her supervisors, recommending a promotion. (*See* Exhibit B). Plaintiff was not given this role or a subsequent role that was McKay recommended, in retaliation for Plaintiff complaining to McKay about the discrimination she was experiencing.

*Plaintiff was Subjected to a Hostile Work Environment*

70. In 1995, Deputy Commissioner McKoy made comments to Plaintiff that she could go a long way as a black woman, but that the individuals she hung around with could have a negative impact on her career, so she should cut them out of her life and allow him to "mold" her.

71. In 2011, after Plaintiff was appointed to the position of Director of Ministerial, Family, and Volunteer Services, Deputy Commissioner McKoy made a comment to the effect of "they really have a sense of humor putting [Plaintiff] in charge of religious services" as a reference to her sexual orientation.

72. Defendant has deliberately, negligently, and with reckless disregard, subjected Plaintiff to over a decade of no advancement. Similar actions were not taken toward Caucasian, and/or non-African American employees. Defendant additionally has subjected Plaintiff to a hostile work environment catered towards African Americans.

73. The consistent and blatant denials of promotion were actions that amounted to a material change in the terms and conditions of Plaintiff's employment and created a hostile environment for her to conduct her work. Specifically, equal promotional opportunities that were afforded to others were restricted for Plaintiff. The discriminatory pretext for the actions of DOCCS is further revealed in that Plaintiff's qualifications for the position were plainly superior

to those of the individual selected, along with the unequal application of DOCCS' policy as it applied to Plaintiff.

### COUNT ONE: VIOLATION OF TITLE VII, 42 U.S.C. § 2000e
### (Discrimination based upon Race, Sex, and Sexual Orientation)

74. Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

75. Defendant discriminated against Plaintiff based on her race, sex, and sexual orientation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

76. At all times relevant herein, Plaintiff was a member of protected classes under Title VII as a black non-heterosexual female.

77. During the relevant period, the responsible management officials were aware of Plaintiff's membership in the protected classes.

78. At all times relevant herein, Plaintiff was qualified to hold her position of employment with Defendant.

79. As alleged herein, Plaintiff suffered adverse employment actions and was subjected to disparate treatment giving rise to an inference of discrimination based on her protected classes in the form of impediments to career progression taken and/or caused by Defendant, its agents and employees, including, but not limited to Deputy Commissioner McKoy and Executive Deputy Commissioner Martuscello.

80. Plaintiff has been disparately impacted by Defendant's internal policies, practices, and/or procedures, which have been discriminatory in operation, and have caused Plaintiff to be deprived of equal employment opportunities, career growth and/or otherwise adversely affected her status as an employee because of Plaintiff's race, sex, and sexual orientation.

81. Defendant has fostered and subjected Plaintiff to a hostile work environment by

making inappropriate comments and repeatedly refusing Plaintiff's request for promotions through its employees, including, but not limited to Deputy Commissioner McKoy and Executive Deputy Commissioner Martuscello.

82. As a proximate result of Defendant's unlawful conduct, intentional, negligent, and reckless behavior, and violations of Federal and New York State laws, Plaintiff has suffered substantial past and future economic damages; compensatory damages, including, but not limited to pain and suffering; mental and emotional distress; and other incidental damages and expenses.

83. Defendant's conduct was outrageous, malicious, and in reckless or intentional disregard of Plaintiff's federally protected civil rights.

84. Plaintiff suffered and continues to suffer irreparable injury and monetary damages in an amount to be determined at trial, and is entitled to an award of punitive damages, costs and attorneys' fees, and any such other relief this Court may find just and proper.

**COUNT TWO: VIOLATION OF TITLE VII, 42 U.S.C. § 2000e**
**(Retaliation Based on Prior Protected Activity)**

85. Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

86. At all times relevant herein, Defendant was an employer within the meaning of all relevant Federal and State laws.

87. At all times relevant herein, Plaintiff was an employee of Defendant.

88. Plaintiff made protected disclosures to Mr. Martuscello in Spring 2017 regarding evidence of discrimination by Deputy Commissioner McKoy.

89. Likewise, on or about 2020, Plaintiff conveyed to Deputy Commissioner McKay that she was being denied career advanced, and he sent an email to her supervisors, recommending a promotion. (*See* Exhibit B).

90. Subsequent to Plaintiff's disclosures, she was subjected to harassment and impediments to career advancement as she was denied promotions.

91. As a result of Defendant's acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past earnings and other employment benefits, and has suffered other monetary and compensatory damages for, *inter alia*, mental anguish, emotional distress, humiliation, and loss of reputation.

## **COUNT THREE: VIOLATION OF 42 U.S.C. § 1981**
**(Discrimination Based on Race)**

92. Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

93. At all times relevant herein, Defendant was an employer within the meaning of all relevant Federal and State laws.

94. At all times relevant herein, Plaintiff was an employee of Defendant.

95. As alleged herein, Plaintiff suffered adverse employment actions and was subjected to disparate treatment giving rise to an inference of discrimination based on her protected classes in the form of impediments to career progression taken and/or caused by Defendant, its agents and employees, including, but not limited to Deputy Commissioner McKoy and Executive Deputy Commissioner Martuscello.

96. Plaintiff has been disparately impacted by Defendant's internal policies, practices, and/or procedures, which have been discriminatory in operation, and have caused Plaintiff to be deprived of equal employment opportunities, career growth and/or otherwise adversely affected her status as an employee because of Plaintiff's race.

97. Defendant has fostered and subjected Plaintiff to a hostile work environment by making inappropriate comments and repeatedly refusing Plaintiff's request for promotions through

its employees, including, but not limited to Deputy Commissioner McKoy and Executive Deputy Commissioner Martuscello.

98. As a result of Defendant's acts, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in an amount to be determined at trial, as well as punitive damages, costs and attorneys' fees, and any other relief this Court may find just and proper.

## COUNT FOUR: VIOLATION OF NEW YORK EXECUTIVE LAW § 296
**(Discrimination based upon Race, Sex, and Sexual Orientation)**

99. Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

100. At all times relevant herein, Plaintiff was a member of protected classes under the New York Executive Law § 296 (hereinafter "New York State Human Rights Law" or "NYSHRL") as a black non-heterosexual female.

101. At all times relevant herein, Plaintiff was qualified to hold her position of employment as a Professor with Defendant.

102. At all times relevant herein, Defendant had four (4) or more persons in its employ and thus was qualified as an "employer" within the meaning of the NYSHRL.

103. The above discriminatory treatment by Defendant, its agents and employees, due to Plaintiff's protected classes, violates the NYSHRL.

104. Because of Plaintiff's race, sex, and sexual orientation, she has been subjected to abuse and mistreatment as set forth herein and has been treated differently than other Defendant employees in the form of harassment and impediments to career progression.

105. As a proximate result of Defendant's unlawful conduct, intentional, negligent, and reckless behavior, and violations of Federal and New York State laws, Plaintiff has suffered substantial past and future economic damages; compensatory damages, including, but not limited

to pain and suffering; mental and emotional distress; and other incidental damages and expenses.

106. Plaintiff suffered and continues to suffer irreparable injury and monetary damages in in an amount to be determined at trial, and is entitled to an award of punitive damages, costs and attorneys' fees, and any such other relief this Court may find just and proper.

## COUNT FIVE: VIOLATION OF NYSHRL
### (Retaliation based on Protected Activity)

107. Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

108. At all times relevant herein, Plaintiff was a member of protected classes under the NYSHRL as a black and gay female.

109. At all times relevant herein, Defendant had four (4) or more persons in its employ and thus was qualified as an "employer" within the meaning of the NYSHRL.

110. Plaintiff made multiple complaints to the Defendant about the systemic racism and hostile work environment based on race and sexual orientation.

111. Notably, in Spring 2017, Plaintiff reported to Mr. Martuscello that she had been subjected to discrimination and harassment by Deputy Commissioner McKoy.

112. Likewise, on or about 2020, Plaintiff conveyed to Deputy Commissioner McKay that she was being denied career advanced, and he sent an email to her supervisors, recommending a promotion. (*See* Exhibit B).

113. In response, Defendants failed to engage in remedial action, and instead, retaliated against Plaintiff, by inter alia, continuing to deny her promotions and career advancement despite her eligibility and excellent work performance.

114. The above retaliatory treatment by Defendant, its agents and employees were due to Plaintiff's opposition to Defendant's unlawful and/or discriminatory practices is in violation of

the NYSHRL.

115. As a proximate result of Defendant's unlawful conduct, intentional, negligent, and reckless behavior, and violations of Federal and New York State laws, Plaintiff has suffered substantial past and future economic damages; compensatory damages, including, but not limited to fear, personal humiliation and degradation; pain and suffering; mental and emotional distress; and other incidental damages and expenses.

116. Plaintiff suffered and continues to suffer irreparable injury and monetary damages in an amount to be determined at trial, and is entitled to an award of punitive damages, costs and attorneys' fees, and any such other relief this Court may find just and proper.

## COUNT SIX: VIOLATION OF NYLL § 740
**(Retaliation based on Opposition)**

117. Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

118. At all times relevant herein, Plaintiff was qualified to hold her position of employment with Defendant.

119. At all times relevant herein, Defendant had one (1) or more persons in its employ and thus was qualified as an "employer" within the meaning of the NYLL.

120. Throughout the relevant period, Plaintiff identified illegal contracts, making protected disclosures by reporting information that evinces violation of law.

121. As a result of Plaintiff's actions, Plaintiff was repeatedly denied promotions and subjected to harassment.

122. The above retaliatory treatment by Defendant, its agents and employees were due to Plaintiff's opposition to Defendant's unlawful and/or discriminatory practices in violation of the NYLL.

123. Because of Plaintiff's opposition to Defendant's unlawful and/or discriminatory practices, she has been subjected to abuse and mistreatment as set forth herein and has been treated differently than other Defendant employees in the form of harassment and impediments to career progression.

124. As a proximate result of Defendant's unlawful conduct, intentional, negligent, and reckless behavior, and violations of Federal and New York State laws, Plaintiff has suffered substantial past and future economic damages; compensatory damages, including, but not limited to pain and suffering; mental and emotional distress; and other incidental damages and expenses.

125. Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of, in an amount to be determined at trial, and is entitled to an award of punitive damages, costs and attorneys' fees, and any such other relief this Court may find just and proper.

## COUNT SEVEN: VIOLATION OF FMLA
### (Discrimination and Retaliation in Violation of the FMLA)

126. Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

127. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA").

128. At all times relevant herein, Defendant was a "covered employer" within the meaning of the FMLA.

129. By the actions described above, among others, Defendant violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, inter alia, denying Plaintiff leave which she was entitled to under the law.

130. Moreover, Defendant violated the FMLA by retaliating against Plaintiff for exercising her rights under same, by, inter alia, denying her the role of interim superintendent at

Eastern, although the role should have been given to her based on Defendant's policy and practice. The role was given to Tom Melville, a White/Caucasian Male, who was *less* qualified than Plaintiff.

131. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff requests judgment as follows:

A. An order declaring that Defendant has violated the anti-discriminatory provisions of Title VII, Section 1981, FMLA, and the NYSHRL;

B. An order declaring that Defendant has violated the anti-retaliatory provisions of the NYLL § 740;

C. An order enjoining Defendant from engaging in unlawful conduct alleged within this Complaint at any time in the future;

D. An award of all damages under applicable law, including compensatory damages, liquidated damages and punitive damages;

E. An award of Plaintiff's reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e-5(k); and

F. An award of such other legal and equitable relief as the Court deems just and proper.

Dated: New York, New York
January 23, 2023

Respectfully submitted,

_____

                Chaya Gourarie, Esq.
                Tully Rinckey, PLLC
                777 Third Avenue, 21st Floor
                New York, NY 10017
                (646) 813-2965
                *Attorney for Plaintiff*