UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

CHERYL MORRIS,

                       Plaintiff,

      -against-                              1:23-CV-89 (LEK/ML)

NYS DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION,

                       Defendant.

---

## <u>MEMORANDUM-DECISION AND ORDER</u>

## I.    INTRODUCTION

On January 23, 2023, Plaintiff Cheryl Morris filed a complaint against her employer, Defendant New York State Department of Corrections and Community Supervision. Dkt. No. 1 ("Complaint"). In the Complaint, Plaintiff alleges claims related to race-based and gender and sexuality-based discrimination. <u>See</u> Compl. ¶¶ 74–131. Defendant filed a motion to dismiss on September 28, 2023. Dkt. No. 18-1 ("Motion"). Plaintiff filed a response, Dkt. No. 25 ("Response"), and Defendant filed a reply, Dkt. No. 27 ("Reply").

For the reasons described below, Defendant's Motion will be granted in part and denied in part.

## II.    BACKGROUND

The following facts are stated as alleged in Plaintiff's Complaint.

Plaintiff identifies as a Black female of non-heterosexual sexual orientation. <u>See</u> Compl. ¶¶ 17–18. Defendant is "a Department of the New York State government." <u>Id.</u> ¶ 14. Plaintiff has been employed by Defendant "in multiple positions for more than twenty-five years." <u>Id.</u> ¶ 19;

see also id. ¶¶ 21, 23 (listing positions in which Plaintiff served); id. ¶¶ 22, 24 (listing Plaintiff's responsibilities while in those positions).

Two non-defendant individuals were "key decision maker[s] with respect to Plaintiff's promotions and career advancement:" Jeff McKoy ("McKoy"), who served as Defendant's Deputy Commissioner for Program Services, id. ¶¶ 25, 27, and Daniel Martuscello ("Martuscello"), who served as Defendant's Executive Deputy Commissioner, id. ¶¶ 29, 31. McKoy is "an African American Male." Id. ¶ 26. Martuscello is "a White/Caucasian Male." Id. ¶ 30. Both knew about Plaintiff's "status as an African American, gay woman." Id. ¶¶ 28, 32.

### A.  Failure to Promote

In 2012, Plaintiff was supervised by Catherine Jacobsen ("Jacobsen"), who had replaced Kenneth Perlman ("Perlman") following a period of illness. See id. ¶¶ 33–34. Perlman "had promised Plaintiff that if she 'cleaned up' the Ministerial, Family & Volunteer Services at Eastern, he would promote her to a superintendent at a prison." Id. ¶ 34. "[I]n furtherance of Perlman's promise, and because she was eligible," id. ¶ 33, Jacobsen approached McKoy regarding a promotion for Plaintiff, see id. ¶ 35. McKoy "responded that Plaintiff was not 'ready' for a promotion." Id. ¶ 33. McKoy later told Plaintiff that he was not obligated to fulfill Perlman's promise. See id. ¶ 36. Despite Plaintiff's annual evaluations indicating "satisfactory with no deficiencies," id. ¶ 38, Plaintiff was "told no promotion was forthcoming" in 2013 and 2015. Id. ¶¶ 39–40. In 2016, Plaintiff requested a transfer out of the Central Office. See id. ¶ 41.

In 2017, Plaintiff approached Martuscello to discuss possible advancement, stating that McKoy had denied prior requests for promotion with minimal explanation and that "McKoy's persistent denials were due to discrimination and retaliation based on her race and sexual orientation and the fact that she had questioned Defendant's decisions to overlook questionable

actions of a vendor contractor." Id. ¶ 43. Martuscello replied, "he would speak with McKoy about Plaintiff's aspirations and concerns but warned Plaintiff that McKoy 'wasn't going to be happy.'" Id.

Plaintiff received recommendations for promotions in year-end reports in 2017, 2018, 2019, and 2020. See id. ¶¶ 44–45. Despite these recommendations, "Plaintiff was denied a promotion" while "her white counterparts were routinely promoted, despite being *less* qualified than her." Id. ¶ 46; see also ¶ 47 (describing the promotion of three white female applicants who each "held the title of Director but were then promoted to Assistant Commissioner, which is precisely what Plaintiff had requested multiple times"). "McKoy did not announce any of the vacancies related to the role [Plaintiff] was seeking" and instead "called the applicants of his choosing for an interview, and he never called Plaintiff." Id. ¶ 49. Only some job vacancies were posted publicly, and "the white applicants were not told that there were additional requirements[,] such as additional training." Id. ¶ 47, 50.

On November 23, 2020, Deputy Commissioner Osborn McKay ("McKay"), who reported to Martuscello, recommended Plaintiff to Martuscello for a promotion. See id. ¶¶ 51, 53. Martuscello replied that "more training was necessary for Plaintiff." Id. ¶ 52; see also Dkt. No. 1-2 ("McKay Email") at 1.

In August 2021, McKay's secretary invited Plaintiff to apply for the position of Assistant Commissioner. See Compl. ¶ 53. Plaintiff interviewed for the position but was not selected; "[i]nstead, the position had been given to a white applicant who was *less* qualified than Plaintiff and had far less experience." Id. In the months following, Plaintiff submitted her resignation. See id. ¶ 54.

### B.  Retaliation

In Spring 2017, Plaintiff reported to Martuscello that McKoy had subjected her to discrimination. See id. ¶ 66. During the relevant time period, Plaintiff also "informed her chain of command of illegal contracts." Id. ¶ 67. Defendant "failed to engage in any investigative or remedial action, but instead sanctioned the unlawful discrimination" and continued to deny Plaintiff opportunities for advancement. Id. ¶ 68.

In 2020, Plaintiff told McKay that she was being denied opportunities, and McKay "sent an email to her supervisors, recommending a promotion." Id. ¶ 69; see also McKay Email at 2. Plaintiff did not receive a career advancement. See Compl. ¶ 69.

### C.  Hostile Work Environment

"In 1995, Deputy Commissioner McKoy made comments to Plaintiff that she could go a long way as a black woman, but that the individuals she hung around with could have a negative impact on her career, so she should cut them out of her life and allow him to 'mold' her." Id. ¶ 70.

After Plaintiff was appointed as Director of Ministerial, Family & Volunteer Services in 2011, McKoy "made a comment to the effect of 'they really have a sense of humor putting [Plaintiff] in charge of religious services' as a reference to her sexual orientation." Id. ¶ 71.

Over the duration of her employment with Defendant, Plaintiff was denied promotions, while "[s]imilar actions were not taken toward Caucasian, and/or non-African American employees." Id. ¶ 72.

### D.  FMLA Leave

In December 2019, Plaintiff's mother was diagnosed with a terminal illness and was hospitalized. See id. ¶ 55. In April 2020, Plaintiff contacted Commissioner Annucci to request a

hardship transfer. See id. ¶ 56. Approximately one week later, McKoy contacted Plaintiff and stated, "the transfer was not likely to happen with COVID-19." Id. ¶ 57. "Upon information and belief, there was a vacancy in the area Plaintiff had requested to transfer." Id. ¶ 58. Also in April 2020, Plaintiff learned "that her mother's condition had worsened" and took leave under the Family Medical Leave Act ("FMLA") "to spend time with her mother before she passed." Id. ¶ 59. Plaintiff intermittently took time away from work to care for her mother between December 2019 and April 2020 and "was off the entire month of May 2020." Id.

When Plaintiff returned to work, "she placed a verbal request for leave on Friday in order to clear her mother's apartment" but this request was denied by Prison Superintendent William Lee ("Lee"). Id. ¶ 60; see id. ¶ 44. Plaintiff filed a written request that was also denied and was "returned with a note from [] Lee stating she needed to come to work." Id. ¶ 61. After denying her request, Lee "instructed Plaintiff to work on [] Saturday and Sunday, her days off, despite the fact that there were no major issues and sufficient coverage without her attendance." Id. ¶ 62. During that period, other white employees were permitted to go on leave after experiencing losses in the family. See id. ¶¶ 63–64. When Plaintiff returned from FMLA leave, she was denied a promotion despite being "the most senior person," purportedly in response to her taking FMLA leave. Id. ¶ 65. "Usually, this role goes to the most senior person." Id. The role was given to a white male "who was *less* qualified than Plaintiff" and who had taken leave after a family death during the relevant time period. Id. ¶¶ 63, 65.

### E. Administrative Exhaustion

On January 5, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq* ("Title VII"). See id. ¶ 8. On October 25, 2022,

the EEOC issued a Notice of Right to Sue. See id. ¶ 9; Dkt. No. 1-1 ("Notice of Right to Sue" or "NRS").

### F.  Claims Pled and Relief Requested

In the Complaint, Plaintiff alleges seven causes of action against Defendant: (1) discrimination based on race, sex, and sexual orientation under Title VII, see Compl. ¶¶ 74–84; (2) retaliation based on a prior protected activity under Title VII, see id. ¶¶ 85–91; (3) discrimination based on race under 42 U.S.C. § 1981, see id. ¶¶ 92–98; (4) discrimination based on race, sex, and sexual orientation under New York Executive Law § 296 ("New York State Human Rights Law" or "NYSHRL"), see id. ¶¶ 99–106; (5) retaliation based on a protected activity under NYSHRL, see id. ¶¶ 107–16; (6) retaliation based on opposition under New York Labor Law ("NYLL") § 740, see id. ¶¶ 117–25; and (7) discrimination and retaliation in violation of the Family Medical Leave Act, 29 U.S.C § 2601 ("FMLA"), see id. ¶¶ 126–31.

Plaintiff requests an "order declaring that Defendant has violated the anti-discriminatory provisions of Title VII, Section 1981, FMLA, and the NYSHRL;" an "order declaring that Defendant has violated the anti-retaliatory provisions of the NYLL § 740;" an "order enjoining Defendant from engaging in unlawful conduct alleged within this Complaint at any time in the future;" and awards of damages, attorneys' fees, and costs. Id. at 19.

## III.   LEGAL STANDARD

The standards under Federal Rule of Civil Procedure 12(c) and Federal Rule of Civil Procedure 12(b)(6) are "indistinguishable." DeMuria v. Hawkes, 328 F.3d 704, 706 n.1 (2d Cir. 2003). Therefore, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ., 9

F.4th 91, 94 (2d Cir. 2021) (quotation marks and citation omitted). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleading facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

## IV.   DISCUSSION

### A.  Title VII Claims

Plaintiff asserts that Defendant discriminated against Plaintiff on the basis of her race, sex, and sexual orientation by hindering her career progression and creating a hostile work environment. See Compl. ¶¶ 74–84. Additionally, Plaintiff alleges that Defendant retaliated against her after she reported evidence of this discrimination. See id. ¶¶ 85–91.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

### 1.    *Failure to Exhaust*

Before filing a Title VII suit in federal court, a plaintiff must "exhaust the administrative remedies provided by statute." Duplan v. City of New York, 888 F.3d 612, 621 (2d. Cir. 2018). "[A] Title VII plaintiff generally must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e–5(e)(1), and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency." Id. at 621–622 (footnote omitted).

On January 5, 2022, Plaintiff filed a charge of discrimination with the EEOC. See Compl. ¶ 8. Plaintiff received notice of her right to sue on October 25, 2022, see NRS, and filed the Complaint within ninety days of receiving notice of her right to sue, see Compl. Defendant argues that Plaintiff's Title VII claims should be dismissed because Plaintiff did not attach a copy of the filed Charge of Discrimination with the Complaint. See Mot. at 7–8. While it is true that Plaintiff may only raise claims related to those stated in the EEOC charge, Defendant does not provide any authority stating that Plaintiff is required to file the EEOC charge as an attachment to the Complaint. See id. Nor has Defendant established that Plaintiff failed to exhaust her remedies. See Hardaway v. Hartford Pub. Works Dept., 879 F.3d 486, 491 (2d Cir. 2018) (holding that "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense"). With deference to Plaintiff and in light of the limited factual record, the Court declines to rule on whether Plaintiff's claims as stated in the Complaint were previously included in her complaint to the EEOC.

### 2.    *Statute of Limitations*

Next, Defendant argues that any Title VII claims based on allegedly discriminatory acts that occurred prior to March 2021 are time-barred. See id. at 8–10. The Court finds that all of

8

Plaintiff's Title VII claims are time-barred except for her discrimination claim based on the August 2021 denied promotion and her retaliation claim based on the November 2020 report of discrimination.

A Title VII claim is time-barred if a plaintiff does not file an EEOC charge within 300 days of the last unlawful practice. See 42 U.S.C. ¶ 2000e-5(e)(1); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78–79 (2d Cir. 2015) (finding that plaintiffs in New York must file charges within 300 days because of New York's "local administrative mechanisms for pursuing discrimination claims"). However, "under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 155–56 (2d Cir. 2012) (alterations omitted). When applying the continuing violation doctrine, courts must distinguish between discrete acts and patterns of behavior, since "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). "Because a discrete discriminatory act is individually actionable and 'occurs' on the day it 'happened,' the 300-day limitations period begins running on the day of each occurrence, meaning each discrete act claim carries its own 300-day limitations period." King v. Aramark Services Inc., 96 F.4th 546, 559 (2d Cir. 2024).

a.    Failure to Promote

Plaintiff alleges in her Complaint that she was discriminated against because she was denied promotions in 2017, 2018, 2019, 2020, and 2021. See Compl. ¶¶ 44–45. Plaintiff filed her charge with the EEOC on January 5, 2022. See id. ¶ 8. Thus, any claims related to alleged

9

discrimination that occurred after March 11, 2021, including Plaintiff's denied promotion in August 2021, are timely. However, the Court finds that the other denied promotions do not fall under the continuing violation doctrine and are therefore time-barred.

"Discrete acts such as . . . failure to promote . . . are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Morgan, 536 U.S. at 114. "An untimely discrete act claim cannot be pulled into the limitations period by a claim premised on a continuing course of conduct, even if the course of conduct includes that discrete act." King, 96 F.4th at 560; see also Rowe v. N.Y. State Dept. of Taxation and Fin., 786 F. App'x 302, 204 (2d Cir. 2019) ("The District Court correctly concluded that [the plaintiff's] complaint, which focused on multiple failures to promote, alleged only a series of discrete acts of retaliation and discrimination, occurring over the course of more than twenty years and often separated by years. Accordingly, the continuing violation doctrine does not revive the time-barred claims.") (footnote omitted); Ferrando-Dehitar v. Anesthesia Group of Albany, P.C., No. 20-CV-1373, 2024 WL 1345345 at *7 (N.D.N.Y Mar. 29, 2024) (holding that continuing violation doctrine did not apply to a plaintiff's failure to promote claims and only considering the promotion claim that fell within the Title VII limitations period); Wheeler v. Praxair Surface Technologies, Inc., 694 F. Supp. 3d 432, 450 (S.D.N.Y. 2023) (same).

Since Plaintiff's other denied promotions constitute discrete acts that cannot be considered timely under the continuing violation doctrine. Accordingly, the Court finds timely only Plaintiff's allegation that she was discriminated against in violation of Title VII when she was denied a promotion in August 2021.

b.      Hostile Work Environment

Generally, "[h]ostile environment claims [based on patterns of behavior] are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." Morgan, 536 U.S. at 115; see also King, 96 F.4th at 559–60 ("Claims of a discriminatory hostile work environment are subject to the continuing violation doctrine because the very nature of a hostile environment claim involves repeated conduct.") (internal quotations omitted). "A discrete discriminatory act . . . within the limitations period may not only support a claim for damages, it may also render a hostile work environment claim timely *if it is shown to be a part of the course of discriminatory conduct that underlies the hostile work environment claim.*" Id. at 561. However, "incidents of different natures that are separated by an extended period of inactivity are typically not sufficiently related." Riggs v. Akamai Techs., No. 23-CV-6463, 2024 WL 3347032, at *5 (S.D.N.Y. Jul. 8, 2024) (finding both that incidents of assault were not related to vulgar comments because they "were different in nature," "happened years before with a long period of inactivity," and involved different colleagues in different working environments); see also Irrera v. Humpherys, 695 F. App'x 626, 629 (2d Cir. 2017) (denying relatedness because the periods of inactivity between acts in 2010, 2011, 2012, and 2014 were too long); Staten v. City of New York, 653 F. App'x 78, 80 (2d Cir. 2016) (denying relatedness because timely complaints about unfair work assignments differed in nature from untimely complaints about derogatory comments).

In the Complaint, Plaintiff alleges she was subjected to a hostile work environment through two comments made by McKoy: one in 1995 regarding her race and one in 2011 regarding her sexuality. See Compl. ¶¶ 70–71. Plaintiff also asserts in her Complaint that "[c]onsistent and blatant denials of promotion were actions that . . . created a hostile environment

for her to conduct her work." Id. ¶ 73. Both the comments and all promotion denials before

August 2021 occurred before March 11, 2021, within the 300-day window before Plaintiff filed

her EEOC charge.

Plaintiff does not establish how the comments from 1995 and 2011 are tied to her failure

to be promoted in 2021. See King, 96 F.4th at 561 (requiring linkage between the discriminatory

conduct and the adverse employment action for hostile work environment claims). Although

McKoy had denied Plaintiff's prior requests for promotion, the 2021 denial involved a position

under McKay's authority, and McKay was not supervised by McKoy. See Compl. ¶ 53. Plaintiff

does not allege that McKoy was involved in the decision to deny Plaintiff that promotion or that

either McKay or Martuscello participated in or were present for either of McKoy's comments.

Given the long periods of inactivity, the different subject matter of the comments, and the

different individuals involved, the Court cannot consider whether the comments created a hostile

work environment because they are not sufficiently connected to the promotion denied in August

2021. See King, 96 F.4th at 561.

Because the promotion denials, however, were similar in kind and with similar alleged

motivations, the Court will presume the denied promotions are related to the 2021 denial for the

purpose of assessing the statute of limitations.

c.    Retaliation

A plaintiff must file a charge of discrimination with the EEOC "within three hundred

days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1).

Plaintiff alleges that she reported her experiences of discrimination in the spring of 2017 and in

2020, see Compl. ¶¶ 88–89, and that Defendant retaliated against her by denying her a

promotion, see id. ¶ 90.[1] While Plaintiff does not specify which denied promotion was retaliatory, the Court presumes that Plaintiff alleges the denied promotion in August 2021 was also retaliatory. See id. ¶ 85 (incorporating all previously stated allegations into Title VII retaliation claim). For the same reasons as stated above, Plaintiff's retaliation claim based on the August 2021 promotion denial is not time barred.

### 3. *Failure to State a Claim*

#### a. Failure to Promote

Next, the Court assesses whether Plaintiff has properly stated a claim for discrimination based on the promotion denied in August 2021.

At the pleading stage, "in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801 F.3d at 86; see also Matthew v. Texas Comptroller of Public Accounts, No. 21-CV-5337, 2022 WL 4626511, at *4 (S.D.N.Y. Sep. 30, 2022) ("To infer discriminatory intent at the motion to dismiss stage, 'the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of discrimination.'") (quoting Vega, 801 F.3d at 85). Failure to promote is an adverse employment action for purposes of an employment discrimination claim under Title VII. See Barella v. Village of Freeport, 16 F. Supp. 3d 144, 162 (E.D.N.Y. 2014). A plaintiff states discriminatory intent by alleging disparate treatment between them and a similarly situated employee outside of the protected group. See

---

[1] During the relevant time period, Plaintiff also "informed her chain of command of illegal contracts." Id. ¶ 67. However, the Court will decline to consider those allegations when assessing her retaliation claims because those reports are not linked to the exercise of a right protected under Title VII.

Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003); see also Williams v. Classic Security, No. 18-CV-1691, 2019 WL 4511953, at *4 (S.D.N.Y. Sep. 19, 2019) ("The key question is whether the plaintiff pleads facts sufficient to render plausible the minimal 'motivating factor' inference needed to survive a Rule 12(b)(6) motion.").

Since Plaintiff has alleged that she was passed over for a promotion in August 2021, see Compl. ¶ 53, which constitutes an adverse employment action, see Barella, 16 F. Supp. 3d at 162, she need only allege that her race and gender were motivating factors in her failure to promote. Plaintiff alleges that she worked for DOCCS for twenty-five years, see id. ¶ 19, received satisfactory performance evaluations, see id. ¶ 38, and collected recommendations for promotion during that time, see id. ¶¶ 44–46. Plaintiff also alleges that she was directly invited to apply for the role of Assistant Commissioner. See id. ¶ 53. Nevertheless, Plaintiff states that the position was "given to a white applicant who was *less* qualified than Plaintiff and had far less experience." Id.;[2] see also id. ¶ 65. Plaintiff also alleges that three women who did not identify as Black received promotions to the type of position Plaintiff sought but "were *not* told that there were additional requirements – such as additional training in prison or training at large – that were necessary for the role of [] Assistant Manager." Id. ¶ 47. Based on these allegations, the Court finds that Plaintiff has met the minimal burden required to show that Defendant's failure to

---

[2] Defendant attempts to dispute Plaintiff's factual allegations by referring to a report drafted by an attorney employed by Defendant to respond to Plaintiff's EEOC charge. See Reply at 4 (citing Dkt. No. 26-2 ("Cook Exhibit") at 3, 5). Leaving aside whether it is proper to consider such attachments when reviewing a motion to dismiss, Defendant misstates the Cook Exhibit by asserting that the "Assistant Commissioner position went to Alicia Smith, a Black female." Id. The Cook Exhibit directly states, "[i]n March 2022, the Department appointed Deane Gardner, a White woman to the position of Assistant Commissioner." Cook Exhibit at 4. Plaintiff's allegation is that she was passed over in August 2021 for a position and that the position ultimately went to a white applicant. See Compl. ¶ 53. Moreover, insofar as Defendant argues that Alicia Smith, a Black woman, held that role from 2018 to March 2022, when she was replaced by a white woman, this does not contradict Plaintiff's factual allegations.

promote Plaintiff could have been motivated by discriminatory intent. Accordingly, Defendant's motion to dismiss Plaintiff's August 2021 failure to promote claim is denied.

### b.   Hostile Work Environment

To sufficiently plead a claim of hostile work environment, a plaintiff must show that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." Id. at 374. "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015). To determine whether a defendant created a hostile work environment, a court looks to several factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Plaintiff's remaining hostile environment claim is based on allegations that "[c]onsistent and blatant denials of promotion were actions that . . . created a hostile environment for her to conduct her work." Compl. ¶ 73. These annual denials fall short of the requirement that Defendant's actions be severe, continuous, and pervasive. See Alfano, 294 F.3d at 380 (finding five incidents of harassment over four years were insufficient to create a hostile work environment because "the incidents were infrequent and episodic"). Further, Plaintiff has not specifically alleged how the denied promotions interfered with her work or otherwise impacted her conditions of employment. Given these pleading deficiencies, Plaintiff fails to state a Title VII hostile work environment claim.

c.    <u>Retaliation</u>

Title VII makes it unlawful for any employer to discriminate against his employee because the individual has "opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" <u>Littlejohn</u>, 795 F.3d at 315–16 (affirming dismissal of the plaintiff's retaliation claims following a motion to dismiss) (quoting <u>Hicks v. Baines</u>, 593 F.3d 159, 164 (2d Cir. 2010)); <u>see also</u> <u>Vega</u>, 801 F.3d at 90 ("Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice.") (reversing dismissal of a plaintiff's retaliation claims following a motion for judgment on the pleadings).

Defendant does not contest that Plaintiff participated in a protected activity by reporting discrimination, that Defendant knew of the reports of discrimination, or that Plaintiff suffered an adverse consequence when she was not promoted. <u>See</u> Mot. at 17–18. Accordingly, the Court will focus on whether Plaintiff has adequately alleged causation between her reports of discrimination and her denied promotion.

A causal connection can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . ; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." <u>Gordon v. N.Y.C. Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000). While the

16

Second Circuit "has 'not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation,' we have previously held that a period of several months can demonstrate a causal connection between the protected activity and the alleged adverse action." Banks v. Gen. Motors LLC, 81 F.4th 242, 277 (2d Cir. 2023) (quoting Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010)). "[T]he rule of but-for causation is not applicable as to whether [the plaintiff] established a *prima facie* case—it applies when a plaintiff is rebutting an employer's neutral reason for an adverse employment action." Rasmy v. Marriott Int'l, 952 F.3d 379, 391 (2d Cir. 2020).

In this case, Plaintiff alleges that Defendant retaliated against her after a 2017 report of discrimination and a November 2020 report of denied career advancement. See Compl. ¶¶ 66–69; McKay Email at 2.[3] Plaintiff also alleges that, when she reported the discrimination in 2017, Martuscello said he would speak to McKoy but that he "wasn't going to be happy," which Plaintiff interprets as "a veiled threat of retaliation." Id. ¶ 43. As noted above, Plaintiff's sole timely adverse employment action is the August 2021 denied promotion. See *supra* IV.A.2.c. Since Plaintiff does not allege direct evidence of retaliatory animus or other circumstantial evidence, the Court assesses whether the reports are sufficiently close in time to the retaliatory action to suggest causation.

Plaintiff fails to establish a causal connection between her Spring 2017 report and being denied a promotion in August 2021. Plaintiff provides no caselaw to suggest that a gap of more than four years, even with Martuscello's comment, is sufficient to demonstrate causation.

---

[3] Plaintiff does not state when in 2020 she made her report of discrimination in the body of the Complaint. See Compl. ¶ 69. However, since Plaintiff states that she made this report to McKay and references emails attached to the Complaint, the Court construes this report as having been made on or around the timestamp of those emails, November 10, 2020. See McKay Email at 2.

However, the eight-month period between the November 2020 report and the August 2021 denied promotion is sufficient to establish a causal connection. See Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (concluding that a "seven-month gap between [plaintiff's] filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote"); Grant v. Bethlehem Steel Corp., 622 F.3d 43, 45–46 (2d Cir. 1980) (finding a causal connection between a retaliatory act and an EEOC complaint filed eight months earlier).

Accordingly, Plaintiff's Title VII retaliation claim based on her report of discrimination in 2017 is dismissed for failure to allege a connection between the protected activity and the retaliatory action. However, Plaintiff has stated a claim for retaliation based on her November 2020 report of discrimination.

### B. Section 1981

Under Section 1981:

> All persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and actions of every kind, and to no other.

42 U.S.C. § 1981(a). Plaintiff claims that she suffered adverse employment actions and was subjected to disparate treatment based on her protected classes in violation of the rights enumerated in Section 1981. See Compl. ¶¶ 92–98. Defendant argues that Plaintiff's claims under Section 1981 should be dismissed because they are barred under the Eleventh

Amendment.[4] See Mot. at 18–19. For the following reasons, Plaintiff's Section 1981 claims are dismissed.

The Supreme Court has held that "the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989). The Second Circuit has interpreted this to mean that Section 1983 "provides the sole cause of action available against state actors to have violated § 1981." Duplan v. City of New York, 888 F.3d 612, 616 (2d Cir. 2018); see also Smalls v. Collins, 10 F.4th 117, 145 (2d Cir. 2021) (affirming dismissal of claims under Section 1981 based on the holding in Duplan). Since employees of Defendant are state actors that can be sued under Section 1983, see Salvana v. N.Y. State Dept. of Corr. and Cmty. Supervision, 621 F. Supp. 3d 287, 300 (N.D.N.Y. 2022), Plaintiff cannot use Section 1981 to pursue damages claims she could have pursued under Section 1983. Accordingly, Plaintiff's Section 1981 claims for monetary damages are dismissed.

While Plaintiff appears to acknowledge that she cannot pursue monetary damages through Section 1981—albeit for different reasons than those described here—she argues that she may pursue "declaratory relief or prospective injunctive relief against DOCCS under section 1981." Resp. at 18–19. Defendant argues that "Plaintiff does not seek declaratory or injunctive relief in her Third Cause of Action, nor does she bring any claims against officials in their official capacity." Reply at 7. However, the Court finds that Plaintiff's Complaint has requested declaratory and injunctive relief. See Compl. at 19 (requesting "[a]n order declaring that Defendant has violated the anti-discriminatory provisions of . . . Section 1981" and "[a]n order

---

[4] Defendant also argues that Plaintiff's claims under section 1981 are time-barred. See Mot. at 19–20. Since Plaintiff's claims are dismissed on other grounds, the Court declines to assess this argument at this time.

enjoining Defendant from engaging in unlawful conduct alleged within this Complaint"). As

such, the Court turns to whether Plaintiff may pursue declaratory and injunctive relief under

Section 1981.

Sovereign immunity does not bar a plaintiff's pursuit of injunctive relief under Section

1981 against state officials. "'A § 1981 suit is treated in the same manner as a § 1983 action for

purposes of Eleventh Amendment Immunity,' so 'when prospective injunctive relief is sought,

the Eleventh Amendment is no bar to using [Section 1981] as the vehicle for such relief.'"

Bowman v. N.Y. State Hous. & Cmty. Renewal, No. 18-CV-11596, 2020 WL 1233701, at *4

(S.D.N.Y. Mar. 13, 2020) (quoting Scelsa v. City Univ. of New York, 806 F. Supp. 1126, 1138

(S.D.N.Y. 1992)); see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989)

(determining that "a state official in his or her official capacity, when sued for injunctive relief,

would be a person under § 1983 because 'official-capacity actions for prospective relief are not

treated as actions against the State'") (quoting, *inter alia*, Kentucky v. Graham, 473 U.S. 159,

167 n.14 (1985)).

In conformity with the Supreme Court's guidance regarding proper defendants under

Section 1983, "[p]rospective injunctive relief would be available under [Section 1981] . . . when

the suit is against the appropriate officials named in their official capacity." Scelsa, 806 F. Supp.

at 1138 (citing Ex parte Young, 209 U.S. 123 (1908)). However, a plaintiff may not pursue

injunctive relief against state entities or state agencies under Section 1981 without running afoul

of the Eleventh Amendment. See Trail v. N.Y. State Dept. of Cor. & Cmty. Supervision, No. 17-

CV-7273, 2018 WL 3711822, at *2 (S.D.N.Y. Aug. 3, 2018) (dismissing claim for injunctive

relief under Section 1981 against DOCCS because "plaintiff does not seek prospective relief or

bring suit against state officials as required under the Ex parte Young doctrine"); Trevathan v.

Baruch College of City of Univ. of N.Y., No. 92-CV-8668, 1994 WL 573299, at *4 (S.D.N.Y. Oct. 18, 1994) (dismissing Section 1981 claims for injunctive relief against a city university because the "Eleventh Amendment also accords Baruch immunity from section 1983 claims for equitable relief" and a "section 1981 suit is treated in the same manner as a section 1983 action for purposes of Eleventh Amendment immunity").

Plaintiff has only named DOCCS as Defendant to this action. See Compl. ¶¶ 13–16. As discussed above, DOCCS is a state agency generally entitled to sovereign immunity in Section 1981 and Section 1983 cases. See Salvana, 621 F. Supp. 3d at 300. Since Plaintiff has named a state agency, rather than a state official in their official capacity, she cannot pursue injunctive relief under Section 1981.

In summary, Plaintiff's claims for monetary damages under Section 1981 are dismissed because Section 1983 is the exclusive federal damages remedy for the rights asserted in Section 1981. Plaintiff's claims against Defendant for injunctive and declaratory relief under Section 1981 are barred by the doctrine of sovereign immunity.

### C.  FMLA Claims

Plaintiff alleges two claims under the FMLA, stating both that Defendant interfered with her rights by denying her requests for leave, see Compl. ¶¶ 60–62, and that she was denied a promotion in retaliation for taking FMLA leave, see id. ¶ 65. Defendant argues that Plaintiff's FMLA claims are both time-barred and fail to state a claim. For the following reasons, Plaintiff's FMLA interference and retaliation claims are dismissed.

### 1.  Statute of Limitations

An FMLA claim must be filed within two years of the "last event constituting the alleged violation" or within three years if the violation was willful. 29 U.S.C. §§ 2617(c)(1)–(2). "An

alleged FMLA violation is willful if an employer either knew or recklessly disregarded whether its conduct violated the FMLA." Smith v. Westchester County, 769 F. Supp. 2d 448, 463 (2d. Cir. 2011). "If an employer acted reasonably, or unreasonably but not recklessly in determining whether its actions were illegal, the alleged violations should not be considered willful." Id.; see Lewis v. New York City Police Dept., 908 F. Supp. 2d 313, 317 (2d Cir. 2012) (finding that the plaintiff had not alleged willfulness because the plaintiff "ha[d] proffered no evidence and point[ed] to nothing in the record that even suggests [the defendants'] denial of her requests for FMLA leave was reckless"). "At the motion to dismiss stage, a plaintiff must make only a general allegation of willfulness to gain the benefit of the three-year statute of limitations under the FMLA." Marsh-Godreau v. SUNY College at Potsdam, No. 15-CV-437, 2016 WL 1049004, at *9 (N.D.N.Y. Mar. 11, 2016) (Kahn, J.) (quoting Higgins v. NYP Holdings, Inc., 836 F. Supp. 2d 182, 192 (S.D.N.Y. 2011)).

Plaintiff alleges that she was denied leave in June 2020 in violation of the FMLA, see Compl. ¶¶ 59–60, and that her allegations are timely under the three-year statute of limitations because Defendant's alleged interference was willful, see Resp. at 19–20. Plaintiff does not specifically state in the Complaint that Defendant's interference was willful, nor does she allege facts that establish knowing or reckless disregard of her FMLA rights. Plaintiff states that she consistently received approval to take time off to care for her mother between December 2019 and May 2020, including the entire month of May. See Compl. ¶ 59. Her interference claim stems from a denial of leave on one "Friday in order to clear her mother's apartment" following her mother's passing. See id. ¶ 60. Generally, an isolated denial of FMLA leave is insufficient to allege willfulness without more evidence. See De Figueroa v. New York, 403 F. Supp. 3d 133, 154 (E.D.N.Y. 2019) (stating that a plaintiff had not alleged willfulness for a single denial of

leave for failure to provide adequate documentation among several granted requests for leave); Mejia v. Roma Cleaning, Inc., No. 15-CV-4353, 2017 WL 4233035, at *5–7 (E.D.N.Y. Sep. 25, 2017) (finding no willfulness after a plaintiff was granted multiple periods of medical leave but denied a request for a reduced work schedule), affirmed sub nom, 751 F. App'x 134 (2d Cir. 2018).

Further, it is not clear from the plain language of the statute that Plaintiff would be entitled to FMLA leave in order to clean her mother's apartment after her mother's passing. See 29 U.S.C. § 2612(a)(1)(C) (stating entitlement to leave "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition" but not to manage the estate or affairs of one of these individuals after their passing). Nor does Plaintiff allege in the Complaint that, as a result of her mother's passing, she experienced "a serious health condition that makes the employee unable to perform the functions of the position of such employee," as would also entitle her to FMLA leave. 29 U.S.C. § 2612(a)(1)(D).[5] Since it is not clear from the pleadings whether Plaintiff's request would be covered by the FMLA, the Court does not find that Defendant's denial constituted willful disregard of Plaintiff's FMLA rights. See Porter v. N.Y. Univ. Sch. of Law, 392 F.3d 530, 531 (2d Cir. 2004) (per curiam) ("If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful."). Since the facts alleged do not show that the Defendant

---

[5] In her Response, Plaintiff does argue that "FMLA leave includes leave for any 'serious health condition,' and mental distress following the death of a family member can be a serious health condition that gives rise to a claim for FMLA leave." Resp. at 21. While such a condition would merit FMLA leave, nowhere in the Complaint does Plaintiff mention requesting FMLA leave for the purpose of alleviating such mental distress. Rather, Plaintiff specifically states that the request was for time "in order to clear her mother's apartment." Compl. ¶ 60.

acted recklessly when denying her single request for leave in June 2020, Plaintiff's claim of interference with her FMLA rights is time barred.

Plaintiff alleges that Defendant retaliated against her by denying her an interim superintendent position in August 2021 for taking protected time under the FMLA in June 2020. See Compl. ¶¶ 53, 65; Resp. at 22. Since Plaintiff filed her Complaint on January 23, 2023, Plaintiff's FMLA retaliation claim was brought within two years and is not dismissed as time-barred.

### 2.    *Failure to State a Claim*

However, Plaintiff's FMLA retaliation claim is dismissed for failure to state a claim because Plaintiff has not adequately alleged retaliatory intent.

"To establish a *prima facie* case of FMLA retaliation, a plaintiff must establish that (1) [s]he exercised rights protected under the FMLA; (2) [s]he was qualified for [her] position; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 147 (2d Cir. 2012) (cleaned up).[6] Where there is no direct evidence of retaliatory evidence, a plaintiff can raise an inference of retaliatory intent "by showing that the protected activity was closely followed in time by the adverse employment action." Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d. Cir. 2001) (cleaned up). "There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse in time beyond two or three months will

---

[6] While Plaintiff alleges that, "during the relevant time period, [she] informed her chain of command of illegal contracts," Compl. ¶ 67, the Court will decline to consider those allegations when assessing her retaliation claims because those reports are not linked to the exercise of a right protected under the FMLA.

break the causal inference." De Figueroa, 403 F. Supp. 3d at 157 (citing Walder v. White Plains Bd. of Educ., 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010)). Courts permit longer lapses where there is other evidence giving rise to the inference of retaliatory intent. See Patane v. Clark, 508 F.3d 106, 116 (2d Cir. 2007) (per curiam) (finding plaintiff sufficiently alleged causation, despite alleged one-year delay between protected activity and retaliatory action, because the causation was not solely alleged based on temporal proximity); Duplan v. City of New York, 888 F.3d 612, 626 (2d Cir. 2018) (allowing a retaliation claim to proceed despite a three-year delay between plaintiff's first EEOC charge and the adverse employment action).

Defendant does not contest that Plaintiff exercised protected rights, that she was qualified for the position, or that she suffered an adverse employment action. See Mot. at 25. Instead, Defendant argues that Plaintiff has failed to meet the fourth prong of the test in Donnelly because she has not established retaliatory intent through temporal proximity. See id. It is not precisely clear from the Complaint when Plaintiff alleges she was denied a promotion because of her FMLA requests. However, in her Response, Plaintiff clarifies that the "[C]omplaint alleges that Ms. Morris was considered for the promotion in August 2021, and that she learned approximately a month later that DOCCS refused to promote her." Resp. at 22 (citing Compl. ¶ 53). With deference to the Plaintiff, the Court assumes this accurately reflects the pleadings in the Complaint and construes her FMLA claims to attach to the denial of the promotion to Assistant Commissioner she applied for in August 2021. See Compl. ¶ 53. However, this delay of at least fifteen months between the protected activity (requesting FMLA leave in June 2020) and the retaliatory activity (being denied a promotion in August or September 2021) is sufficiently long to break the causal inference of retaliatory intent without more evidence that establishes a causal connection. See De Figueroa, 403 F. Supp. 3d at 157.

Plaintiff alleges that she has put forward other evidence of retaliatory intent, including "a pattern of retaliatory refusal to promote" and "retaliatory threats." Resp. at 17 (citing Compl. ¶¶ 44, 45, 51). While these portions of the Complaint do allege unfavorable treatment and denied promotions, Plaintiff does not tie these denials to any of her actions taken pursuant to the FMLA. In any event, Defendant's actions in 2017, 2018, and 2019, see Compl. ¶ 44, predate Plaintiff's first alleged FMLA request. Plaintiff does allege that she was denied a promotion despite a recommendation from Deputy Commissioner McKay on November 23, 2020, and that "Martuscello stated that more training was necessary for Plaintiff." See id. ¶¶ 51–52. However, she does not specifically allege that this denial was related to the 2021 denial at issue in her FMLA claims. Compare id. ¶ 65 (stating that, "[w]hen Plaintiff returned from FMLA leave, she was denied being appointed as the interim superintendent at Eastern") with id. ¶ 53 (discussing the 2021 denial for the position of Assistant Commissioner). Since Plaintiff has not put forward other evidence to support retaliatory intent linking the denied promotion in 2021 with her protected activities under the FMLA, Plaintiff's FMLA retaliation claim is dismissed for failure to state a claim.

### D.  State Law Claims

Defendant argues that Plaintiff's state law claims under the NYSHRL and the NYLL should be dismissed because Defendant is protected by sovereign immunity against claims in federal court. See Mot. at 20–22. Plaintiff does not contest dismissal of her state law claims under these grounds. See Resp. at 17–18, 18 n.7 ("Ms. Morris concedes that New York has not waived sovereign immunity to federal jurisdiction for her state law claims and does not oppose dismissal of those claims from this lawsuit without prejudice"). Accordingly, Plaintiff's state law claims are dismissed.

26

### E.  Leave to Amend

In her Response, Plaintiff requests leave to amend her Complaint should any of her claims be dismissed. <u>See</u> Resp. at 23. Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend a complaint] when justice so requires." A court generally withholds leave to amend where amendment would be futile. <u>See</u> <u>Brooks v. City of Utica</u>, 275 F. Supp. 3d 370, 383 (N.D.N.Y. 2017). To the extent Plaintiff can cure the deficiencies discussed above, Plaintiff is granted leave to amend her Complaint in conformity with all relevant federal and local rules and has thirty (30) days to file an amended complaint should she choose to. Plaintiff is advised that any amended complaint will supersede the existing Complaint in its entirety. Defendant need not file an answer to the remaining portions of the Complaint or any other dispositive motion until twenty-one (21) days after either (1) Plaintiff's deadline for filing an amended complaint or (2) the filing of an amended complaint—whichever is sooner.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss, Dkt. No. 18, is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Plaintiff's Title VII discrimination claims other than the August 2021 failure to promote claim and retaliation claim based on the November 2020 report and all claims under 42 U.S.C. § 1981, the NYSHRL, and the NYLL are **DISMISSED**; and it is further

**ORDERED**, that Plaintiff has thirty (30) days from the filing of this Memorandum-Decision and Order to file an amended complaint; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

27

**IT IS SO ORDERED.**

DATED:    September 20, 2024
              Albany, New York

LAWRENCE E. KAHN
United States District Judge